BOOKER *v.* STATE.

[72 South. 238.]

CRIMINAL LAW. *Trial. Taking articles to jury room.*

In a trial for murder where the defendant admitted stabbing deceased and pleaded self defense, it was not prejudicial to defendant for the court to permit the shirt of deceased and his pocket knife to be taken into the jury room, there being no evidence or showing that the jury made any experiments with them in the absence of accused.

APPEAL from the circuit court of Yalobusha county.

HON. E. D. DINKINS, Judge.

Green Booker was convicted of manslaughter and appeals.

The facts are fully stated in the opinion of the court.

*Creekmore & Stone,* for appellant.

*Ross A. Collins,* Attorney-General, for the state.

STEVENS, J., delivered the opinion of the court.

Appellant was indicted and tried on the charge of murder, was convicted of manslaughter, and sentenced to

fifteen years in the state penitentiary. The evidence for the state tends to prove that appellant while armed with a pistol engaged in a fight with his cousin, Louis Booker, and that after a brother of Louis Booker took appellant's pistol away from him, and after Louis Booker, the deceased, was going down the road away from the scene of the difficulty, appellant overtook the deceased and stabbed him to death with a knife. The parties and all witnesses are negroes, and the evidence as to whether appellant in fact had a pistol is conflicting. There is no dispute about the fact that appellant did stab the deceased with a cheap pocketknife and thereby inflicted wounds from which the deceased died in a few minutes. It was the theory of the defense that appellant was armed with nothing but a pocketknife, and that three Booker brothers, in company with one Slack Garner, met appellant upon the public road, accosted him in a rude and angry fashion, and then seized him and began hitting him with a stick, and, to use the language of the defendant himself, "In the tussle I struck that boy with a knife." In the production of testimony the shirt of the deceased was produced in evidence and identified by Slack Garner, witness for the state, in the following way:

"Q. I will ask you though what this is? A. This is the shirt he had on. Q. Did you see Louie with this shirt on? A. Yes, sir. Q. When was the last time you saw it? A. It was on him, but I helped pull it off of him at his home. Q. Show to the jury the cut holes in that shirt? A. Here is the place where he was stabbed. Q. Is that in the front or back? A. Front."

The pocketknife of the defendant was also produced and identified. After the jury retired to consider their verdict, they sent the bailiff to the trial judge with the request that the shirt and pocketknife be sent into the jury room. The court, over the objection of the accused, complied with this request, and a special bill of exceptions was reserved by the defendant. This appeal presents for our consideration the propriety or correctness

of the action of the trial judge in permitting the jury to take into their room the shirt and knife.

We fail to appreciate the merit of counsel's argument and contention that the jury had no right to take with them into the jury room the knife of the defendant and the shirt which the deceased wore at the time of the fatal encounter. It is frankly conceded that the presence of the cheap pocketknife was not prejudicial to the rights of the accused. It is contended, however, that the jury had no right to take with them the shirt of the deceased, and with it make experiments in the absence of the defendant. There is no evidence, however, that the jury in fact made any experiments, or that they sent for the shirt for the purpose of making experiments. It is nowhere shown what the members of the jury did with the shirt after it was sent to them. It is idle to speculate on the motives or purposes of the jury in making the request. It is possible that some member of the jury was curious to examine the shirt more closely and especially to see the hole made by the knife in its one fatal plunge. It is true the record is silent as to whether or not the shirt was formally introduced in evidence. It was, however, produced before the jury in the trial of the case and in the presence of the accused and was properly identified. There was no dispute then, and there is no contention now, about the shirt in question being the shirt of the deceased, or that it was the particular shirt which the deceased had on at the time he was killed. There being no evidence or showing that the jury in fact attempted any experiments in the absence of the defendant, the only question then presented is whether the court erred in permitting the jury to take with them the articles mentioned.

"All instruments by which an offense is alleged to have been committed; all clothes of parties concerned, from which inference may be drawn; all materials in any way part of the *res gestae*—may be produced at the

trial of the case.'' Wharton's Criminal Evidence, vol. 1, p. 610.

And we see nothing prejudicial to the rights of the defendant in permitting the jury to take the shirt and knife to the jury room under the facts of this particular case. It is a common practice for clothing to be introduced in evidence in homicide cases, and, if introduced we see no impropriety in the jury taking these articles to the room with them, especially with the permission or sanction of the trial judge. As stated, appellant did not deny stabbing the deceased, but attempts to justify his act as being necessary in his self-defense. No harm, therefore, could possibly result from a more careful inspection of the shirt and knife in question.

*Affirmed.*